U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 JUL 17 PM 3:00

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA )
)
v. ) Case No. 2:17-cr-00077-cr-1
)
JOHN CHINNICI )
)
Defendant. )

## OPINION AND ORDER RE: *CURCIO* HEARING
(Doc. 33)

Defendant John Chinnici is charged with unlawfully obstructing, delaying, and affecting commerce and the movement of articles and commodities in commerce by robbery in violation of the Hobbs Act, 18 U.S.C. § 1951. This charge arises out of the January 11, 2016 alleged armed robbery committed by two masked men of two gas station employees on their way to deposit approximately $1,700 at the Citizen's Bank branch in Bennington, Vermont.

On June 20, 2018, the government filed a motion for a hearing pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982) with regard to possible conflicts of interest involving two anticipated government witnesses, Scott Galusha and Amy Stone. (Doc. 33.) The court granted the Office of the Federal Public Defender (the "FPD"), which previously represented Defendant and currently represents Ms. Stone, leave to file an amicus brief in which it argued that it did not have an actual or a potential conflict of interest in this matter.

Defendant is represented by Ernest M. Allen, III, Esq. The government is represented by Assistant United States Attorneys Barbara A. Masterson and Joseph R. Perella.

At the July 12, 2018 *Curcio* hearing, Defendant waived any conflict of interest resulting from his defense attorney's former representation of Scott Galusha. Mr.

Galusha was not present to waive any objection he may have to his former counsel cross-examining him at trial.

In contrast, Defendant does not agree to waive any actual or potential conflict with regard to the FPD's representation of Ms. Stone. Defendant argues that, as his former counsel, the FPD is in a position to use information it gleaned from its former representation of him against him at trial. In addition, he argues that the FPD essentially encouraged Ms. Stone to cooperate, thereby delivering Ms. Stone as a witness to the government contrary to Defendant's best interests. Defendant asks that Ms. Stone be excluded as a witness at trial on this and other grounds.

The FPD argues that it has not breached any duties owed to Defendant as a former client. Having represented Defendant eleven years ago in an unrelated matter, the FPD asserts that there is no likelihood that any prior client confidences could be used against him.[1] The government concurs with the FPD's position and asks the court to find that there is no conflict of interest that precludes Ms. Stone's testimony.

## I. Factual Proffer.

The government proffers that Amy Stone will testify that in January 2016, she sold firearms on behalf of a third party, for which she made approximately $100 per transaction. In one such transaction, Ms. Stone sold a firearm to an individual named "John" whom she met through John's cousin, Vanessa. Ms. Stone described John as "physically large with tattoos on his face and/or neck" and recalled that "John thanked her profusely after buying the gun, explaining that he had just been released from jail and was unable to buy a firearm." (Doc. 33 at 2.) The next day, Ms. Stone again met with John and Vanessa, and John asked to buy ammunition, but Ms. Stone did not sell any to him.

Ms. Stone is represented by Assistant FPD Elizabeth Quinn. In 2006, FPD Michael L. Desautels represented Defendant when he was prosecuted for stealing firearms from a licensed firearms dealer, conspiracy to exchange firearms for crack

---

[1] Far less persuasively, the FPD asserts that no conflict exists because all such confidences became public at Defendant's prior sentencing.

2

cocaine, and being a felon in possession of a firearm. During this representation, Defendant pled guilty to being a felon in possession of a firearm. Prior to sentencing, on July 9, 2007, FPD Desautels was removed as counsel for Defendant, and, on July 11, 2007, Attorney Allen was appointed to represent Defendant. Thereafter, Attorney Allen represented Defendant at sentencing and through the conclusion of his case.

## II. Conclusions of Law and Analysis.

Defendant argues that there is a conflict of interest with regard to Ms. Stone's representation by the FPD because she is a government witness represented by his former counsel. The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. Under the Sixth Amendment, a criminal defendant is entitled to "the right to select and be represented by one's preferred attorney[.]" *Wheat v. United States*, 486 U.S. 153, 159 (1988). Notwithstanding this right, "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.*

The defendant's right to representation by counsel includes the right to representation by conflict-free counsel. *See United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003) ("The right to the effective assistance of counsel also includes the right to be represented by an attorney who is free from conflicts of interest.") (citing *Wood v. Georgia*, 450 U.S. 261, 271 (1981)).

> [A]lthough a criminal defendant can waive [his] Sixth Amendment rights in some circumstances, that right to waiver is not absolute, since "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."

*United States v. Locascio*, 6 F.3d 924, 931 (2d Cir. 1993) (quoting *Wheat*, 486 U.S. at 160). As a result, the "authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process." *Hempstead*

3

*Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (internal quotation marks omitted).

In *United States v. Curcio*, the Second Circuit recognized the conflict of interest created by codefendants represented by the same counsel. "Given the constitutional dimension of the defendant's right to counsel of his own choosing," however, "if the defendant makes a knowing and intelligent election to pursue that right in preference to his right to an attorney of undivided loyalty, disqualification would not protect the Sixth Amendment right that the defendant asserts and would not be 'appropriate.'" *Curcio*, 680 F.2d at 888.

Unlike the conflict of interest at issue in *Curcio*, the possible conflict of interest involving Ms. Stone does not implicate Defendant's current trial counsel Attorney Allen. Instead, it involves Defendant's former counsel, who represents Ms. Stone, a government witness. This alleged conflict will not impede Attorney Allen's ability to cross-examine Ms. Stone or otherwise present a vigorous defense. Accordingly, there is no concern that Attorney Allen will have a conflict of interest by reason of the FPD's representation of Ms. Stone. On that basis alone, Defendant's Sixth Amendment right to conflict-free counsel at his trial will be preserved. *See United States v. Pizzonia*, 415 F. Supp. 2d 168, 179 (E.D.N.Y. 2006) ("Limited representation of a government witness unrelated to representation of the defendant is not likely to present a disabling conflict.") (citing *United States v. Paone*, 782 F.2d 386, 393 (2d Cir. 1986)).

Neither the United States Supreme Court nor the Second Circuit have recognized Defendant's right to have witnesses represented by conflict-free counsel. Instead, a conflict arises only when, as in Mr. Galusha's case, the witness was formerly represented by Defendant's counsel. *See United States ex rel. Stewart on Behalf of Tineo v. Kelly*, 870 F.2d 854, 855 (2d Cir. 1989) (holding that the trial court did not abuse its discretion in disqualifying a defense attorney who had previously represented "[o]ne of the prosecution's key witnesses"). There is thus no *Curcio* issue with regard to the FPD's representation of Ms. Stone.

Although it may be assumed that the FPD acquired confidential information from Defendant in its representation of him eleven years ago, that information is unrelated to the current case in light of the government's proffer regarding Ms. Stone's testimony. There is, moreover, no possibility that in 2007, Defendant confided in the FPD information regarding events that took place in 2016. There is thus no discernable means by which the FPD will be able to use Defendant's past disclosures against him. The FPD will neither call nor question Ms. Stone as a witness at Defendant's trial.

To the extent that Defendant argues that the FPD has an ongoing obligation to refrain from representing anyone with an interest adverse to his, he stretches the duty of loyalty too far. Although the FPD is not bound by Vermont Rules of Professional Responsibility, they are instructive on this point. *See United States v. Murdock*, 2014 WL 12572864, at *4 (D. Vt. Jan. 28, 2014), *report and recommendation adopted*, 2014 WL 12572865 (D. Vt. Mar. 3, 2014) ("In considering whether a lawyer has a conflict of interest, a federal court is guided by state codes of professional responsibility and model rules enacted by the American Bar Association.") (citing *Hempstead Video*, 409 F.3d at 132).

Vermont Rule of Professional Conduct 1.9, which mirrors ABA Model Rule 1.9, describes duties owed to former clients as follows:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person *in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client* unless the former client gives informed consent, confirmed in writing.
>
> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client
>
>> (1) whose interests are materially adverse to that person; and
>>
>> (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) *that is material to the matter*; unless the former client gives informed consent, confirmed in writing.

> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>> (1) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client, or when the information has become generally known; or
>>
>> (2) reveal information relating to the representation except as these rules would permit or require with respect to a client.

VT RULES OF PROF'L CONDUCT r. 1.9 (emphasis supplied).

The scope of a "matter" "depends on the facts of a particular situation or transaction." *Id.* cmt. 2 (internal quotation marks omitted). Matters are "substantially related" if they "involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." *Id.* cmt. 3 (internal quotation marks omitted); *see also United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 239 (2d Cir. 2016) ("A substantial relationship exists where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation.") (internal quotation marks omitted).

In this case, Defendant's 2007 conviction for being a felon in possession of a firearm is separate and distinct from the alleged January 11, 2016 armed robbery for which he is on trial. Ms. Stone's proffered testimony relates only to the latter. Because the two matters do not involve the same transaction or legal dispute, they are not "substantially related" and do not pose a conflict of interest for the FPD under Rule 1.9(a). Of course, the FPD retains an ongoing obligation not to use any information relating to its prior representation to Defendant's disadvantage or reveal information relating to the representation inconsistent with the Rules of Professional Conduct. However, this continuing obligation does not require the FPD's disqualification or the exclusion of Ms. Stone's testimony.

Finally, Defendant's proposed sanction, the exclusion of Ms. Stone's testimony, exceeds the remedy offered by a *Curcio* hearing, which is the appointment of conflict-

6

free counsel. Any unfair prejudice caused by Ms. Stone's testimony is thus more properly considered in the context of Defendant's pending motion *in limine*. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice[.]"). Defendant presents no cogent argument as to why the government should suffer the sanction of the FPD's alleged conflict of interest. *See United States v. Hammad*, 858 F.2d 834, 842 (2d Cir. 1988) (discouraging the use of a district court's discretion to suppress evidence in order to punish unethical conduct because "suppression imposes a barrier between the finder of fact and the discovery of truth."); *see also Lego v. Twomey*, 404 U.S. 477, 489 (1972) (noting that "exclusionary rules are very much aimed at deterring lawless conduct by police and prosecution").

## CONCLUSION

For the foregoing reasons, the court DENIES the exclusion of Ms. Stone's testimony with regard to the *Curcio* hearing.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 17th day of July, 2018.

Christina Reiss, District Judge
United States District Court