**EXHIBIT**

**21**

# STATE OF VERMONT

**SUPERIOR COURT**
Bennington Unit

**CRIMINAL DIVISION**
Docket No. 50-1-16 Bncr

STATE OF VERMONT

VS.

JOHN CHINNICI

Robbery, Mayhew – 01/14/2016 @ 4:18 pm



* * * * * * *

Q      Okay. Here's the deal. I'm gonna ask you one question here. And depending upon the answer, we're goona take care of one of the problems that's out there. He'll go away if we know who it is. So, before we leave here, we're gonna go leave, we're gonna have this conversation. You were having a problem telling me who was with you in the drive through of the bank, correct? I need you to tell me who that person is and if that person is here in this building now, he is going to be arrested and removed. So that he's taken care of. You know he's no longer a threat to you. You tell me that, I'll get on the phone, I'll tell them you and I are going to go out the back door to an awaiting car. And then go to the station and continue our conversation. Simple. But not so simple, correct?

A      Right.

Q      But this is what it's all about, is being truthful to get you what you wanted and ultimately will end up what we want is to solve multiple things.

A      Uh hum.

Q      Who was the person that was with you during the armed robbery Sunday night, Monday morning at the drive through of Citizen's Bank?

[someone comes in]

A      I would really like to talk to somebody first.

Q      You just did.

A      Who?

Q      Your attorney.

A      Yea, I mean either my dad or my sister.

Q      Nope. Nope.

A      Or Vanessa.

Q Nope. Is Vanessa still here?

Q2 I don't know. I mean the whole second floor is packed. I can walk down there but it's...

A Meaning you said that I'm not under arrest so...

Q Because of what the deal is that you made, or the arrangement that we made, the understanding that we have...

A That deal that we were going to talk back there.

Q Correct.

A Well that was the arrangement, not this.

Q But we wanted to remove the threat.

A I'm not worried about it.

Q Okay.

A I'd just really like to talk to somebody in my family first. That's all.

Q We're doing a lot, Austin. I mean we're doing more than we hardly ever do. We're doing a lot, don't push it. Don't push it. We're offering you an excellent opportunity to handle this at one time. Don't push it.

A Yea, you guys still haven't told me what's going to happen.

Q We don't know what you're gonna tell us. So how can I tell you what's going to happen. You know that your attorney which is Lamar Enzor who you've met, told you to be honest. And our thought is to ...

[phone ringing: Q – ah, Austin's having a problem with us. So, we're probably just gonna take him, go back to the station and if he continues to have a problem, then we don't have an understanding anymore. On the third floor, in a meeting room. Okay. The rest of them are on the second floor. Okay. Bye.]

Q You don't know, you don't know, or don't realize what is being done for you.

A No, 'cuz nobody will tell me.

Q What have you told us? You've told us a half of one story.

[Q2 comes in]

Q      So, Austin has met, I met with Attorney....

Q2     Can I sit next to you?

A      Yea.

Q      Enzor. Told him basically briefly everything that we have. Told him what Vanessa told us. Told us what Austin has told us. Told him what I think they haven't told us. Told him that the state which he's already, Lamar's already heard, is willing to package this all in one, is willing Matt to ask for him to be held. We've already got his his conditions of release, and Vanessa's conditions of release changed so that they can have contact. Both said that they couldn't be near each other 'til this is all resolved, just the drug thing. I've already got that done. That's when the Chinnici clan walked in. I said this isn't good. I got his arraignment canceled for today, for tomorrow. Um, I I had, we were gonna basically sneak him out the back door so that we could go back to the convers... go back to the police station, have the conversation that his attorney suggested that we have. Then you know, you suggested or Cam suggested that we ask Austin if he will put a first name in front of the Chinnici name and if it's one of the guys that are here, we'll arrest him, take the threat away, we'll go back to the station and continue. And he's got a problem with that. He wants to talk to his dad. He wants to talk to his mom. He wants to talk to Vanessa. I said we've been too good already. There's no more talking to these people. You gotta shit or get off the pot.

Q2     Do you know why he's here?

Q      Who? John? Yes we do.

Q2     He's here for family court.

Q      Yea. The whole family.

Q2     Right. That's why they're all here.

Q      Well right.

Q2     They're not here for him.

Q      No, but it, I don't want him to be, he freaked when he saw them, when he was with Lamar.

Q2      That's not why they're here Austin.

Q       Well we told him that.

A       I didn't freak out.

Q2      Okay.

Q       Okay?  But we wanted to take care of that one piece since we've got him and he's got a problem putting that name there.  He wanted to talk to his mother, or his father.

A       I never said my mother.  I just asked if I could speak with my dad and my sister that were here. You guys said no, and then I asked if I could speak with Vanessa.

Q       And we gotta go back up there amonst that fray and bring her down.

A       I'm just all alone.

Q2      You're not alone dude.  I'm telling you right now.  We we are doing our best to work this out so that you and Vanessa can still be together and work through your issues because I want you to stay on that Suboxone program.  I already told you that.  You know, I I think I've told you I've gone out of my way today to help you out and um you know, I'm I'm looking to resolve this.  I don't want you to take the rap alone.  You're not the guy with the gun.  I'll say it right here in front of your attorney just like I did before. You're not the guy with the gun.  You know?  Are you guilty of a crime?  Yes.  I'm not hiding that from you but the bottom line is, is that we've switched things around so that we can just be done with this and you need to be honest.  We wrap the package together, your attorney works out the best deal possible with the state's attorney so that we don't have to keep bringing you back before the judge.  Your attorney will tell you, Larry's been around a long time.  The more you keep going in front of the judge, the more apt it is that you're gonna end up in jail, and I don't want that.  And I don't want this turd-knocker downstairs out and about, on the streets and I already told you.  He's gonna go to jail.  I'm telling you, he's gonna go to jail and you know, the guy that that you should be concerned for yourself, is you.  So that we can get your medication and do all the things that you need to do so you can stay employed, so on and so forth.  I'm not here to lecture you man.  I spent enough time with you today that you oughta know that I'm true to my

word. Nothing has gone any different and I didn't even think about having the conditions change so that they could have contact so I applaud you for that.

Q    He did. He asked me and I got it taken care of.

Q2    So, that's that's what this is about. So we've gone out of our way to make sure that you guys can still have contact. If you're worried about him, then we need the name officially on the record that it was him and that's all I'm asking you to do. I know you're scared. You know? I mean it's, we talked about it in my office and I know you're scared, but John Chinnici is the freak. We we know that, but you've gotta be the one to officially say it. He had the gun. Not you. We've talked about this.

A    So what happens after that conversation? Do I get to leave? Do I get to go home? What?

Q    We're going back to the station and you're gonna give me a full story of how everything happened.

Q2    And then we're gonna get you home safely.

Q    One of us, I will, whomever, somebody will bring you home and drop you off at your house.

Q2    We're not gonna, we're not gonna have you walk and all this other stuff. We'll get you home. When is his arraignment date? Tomorrow?

Q    Yup. Tomorrow at 12:30.

Attorney    I'll be here.

Q    You'll be here?

A    So what's getting bundled together? This drug charge and that?

Q2    Well the drug charge and the burglary at Martin's and the incident over at the bank with the bank drop.

Q    And if you did…

A    Wait, wait, wait, wait. What burglary at Martin's?

Q2    The burglary at Martin's. Where Vanessa took the coins to the coinstar.

A    I didn't do that. I didn't. I I never said that I did that.

Q    No, you didn't.

Q2     You didn't.

Q     You didn't. I told you. Vanessa told us stuff. You told us stuff.

A     All right.

Q     And we want to put it together. That's why you gotta be honest.

Q2     And that's why we want to clean up the whole thing.

Q     If you're not gonna be honest, the deal is not a deal.

A     So if I don't admit to something I didn't do...

Q2     If you didn't do it, you have knowledge of it and you can tell us how that all came about.

A     But if I truly don't have knowledge of something, how can I tell you that I do? Honestly.

Q2     Okay, let's start with one at a time here and we'll just deal with...

A     Yea, but that's, that's what I'm saying. That I have to package all that together and admit to all that, and I'm...

Q2     Okay. But you've got the drug thing, and we've got the armed robbery. Let's start with that.

Q     That's already a done deal.

Q2     But we need, ...

Q     The other part of the armed robbery.

Q2     The freak.

Q     Yea.

A     I just feel like I'm still gonna get in trouble. You guys aren't ...

Q2     Yea, I mean you're still gonna get in trouble but we're trying to minimize your trouble. We've been over all this Austin. I mean...

A     Yea but you said that you're going to keep me out of jail, not...

Q2     You're not going to jail. You're not even being arraigned until tomorrow.

A     Right. Tomorrow. But tomorrow I can show up and after I told you guys everything...

Q2     No, that's not the plan. That is not the plan.

Q        Nope.  No sir.

Q2       And I'll say it on the record.  It is not the plan for you to go to jail, but you need to be honest and

we need to tie up all these loose ends that are out there floating around.

Q        We weren't talking about jail just today and go to jail tomorrow.  That's not, that's not…

Q2       We're not gonna screw you like that.  All the time we've spent together today, I'm telling ya, that's

not what this is about.

Q        You know what Vanessa said?  It sounds too good to be true.  That's what she told me a few

minutes ago downstairs.  I said, would you like to know where this stands now?  That's why you were

sitting up here.  We went around the corner and talked.  And she looked, and I said, you don't believe, and

she said look, it sounds too good to be true.  Is what she said.

Q2       Your goal was to be able to be with Vanessa and not go to jail.

A        Yup.

Q2       And that's where we're at.  But you gotta give a little to get a little.

A        Yea, but I'm not gonna admit to something that I didn't actually do.

Q2       That's fine.  Let's go with the armed robbery at Citizen's Bank.  You've admitted that you were

there, you admitted you picked up the bank bag, you admitted to not quite splitting.  You got the money

that Chinnici gave you, but we need you to put a name to Chinnici.  There's plenty of Chinnicis.  But you

need to put a name to it.  Who was with you at Citizen's Bank the night that you picked the bank bag up off

the ground and then ran?

Q        Do you want a minute with him?  Or….

Attorney       I'd like to.


[end recording]

## CERTIFICATE

I, <u>Salli Griggs</u>, Notary Public, hereby certify that the foregoing pages, numbered 1 through 8 inclusive, are a true and accurate transcription of the video recording made and transcribed by me for the use in the case of

STATE OF VERMONT vs. JOHN CHINNICI
Docket No. 50-1-16 Bncr

_____
Salli Griggs