```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF VERMONT


UNITED STATES OF AMERICA    *
                            *
         V                  *
                            *
JOHN CHINNICI               * CRIMINAL FILE NO. 17-77
```

STATUS CONFERENCE
Thursday, February 7, 2019
Burlington, Vermont

BEFORE:

    THE HONORABLE CHRISTINA REISS
       District Judge

APPEARANCES:

    BARBARA A. MASTERSON, ESQ,, Assistant United States
       Attorney, Federal Building, Burlington, Vermont;
       Attorney for the United States

    DAVID J. WILLIAMS, ESQ., Jarvis, McArthur &
       Williams, LLC, 95 St. Paul Street, Suite 2E,
       Burlington, Vermont; Attorney for the Defendant

ANNE NICHOLS PIERCE
Registered Professional Reporter
United States District Court
Post Office Box 5633
Burlington, Vermont  05402
(802) 860-2227

1  THURSDAY, FEBRUARY 7, 2019
2  (The following was held in open court at 1:35 p.m.)
3              COURTROOM DEPUTY:  Your Honor, the matter
4  before the Court is criminal case number 17-CR-77-1,
5  United States of America versus John Chinnici.
6  Representing the government is Assistant United States
7  Attorney Barbara Masterson.  Representing the defendant
8  is Attorney David Williams.
9       And we are here for a status conference.
10             THE COURT:  Good afternoon.  I was advised
11 that Mr. Chinnici does not need to be here, so I hope
12 that was accurate.  And I am happy to hear from both of
13 you about why the Court should or should not be issuing
14 a subpoena.  I am going to tell you where I am in my
15 thinking so you can address that.
16      It is either going to be in the motion for a new
17 trial or a 2255 application that the Court confronts
18 these particular issues.  And I would prefer to do it
19 prior to sentencing.  And Mr. Williams is correct that a
20 claim of ineffective assistance of counsel can be
21 addressed post-trial.  I --
22      These were critical phones.  I said it at the time,
23 and I'm really not seeing why I would address the motion
24 for a new trial first and then authorize the release.
25             So that's kind of where I am stuck.  I am not so

1  sure, you know, how the phone evidence is going to come
2  out.  I noticed that Miss Bryant wouldn't sign her
3  written statement, and Mr. Mayhew at trial told a
4  story -- or testified, I should say, in a way that was
5  somewhat unusual.  And there was a connection between
6  the -- one of the victims of the robbery and Mr. Mayhew,
7  I think was dating Mr. Mayhew's sister or something like
8  that.  So all of that caught my attention.
9      So that's where I am at, and I am going to start
10 with you, Mr. Williams.
11         MR. WILLIAMS:  Thank you, your Honor.
12     Just so you are aware, I spoke with Mr. Chinnici
13 around noon today, I think, maybe 11 o'clock, from jail.
14 I told him what was happening today.  I wanted to make
15 sure he was okay with postponing the consideration of
16 the motion for a new trial so that we could do the
17 discovery that I think is necessary, and he had no
18 objection to that.  He will -- if you want him here to
19 say that on the record, we can have him here.
20         THE COURT:  No.  I need to sentence him
21 promptly.  We don't really have a speedy trial issue,
22 and it's your motions that are preventing me from doing
23 so, which totally legitimately, but that's what the
24 delay is.  So I just didn't want to have a merits-based
25 discussion without him present unless he was waiving his

```
 1    appearance.
 2              MR. WILLIAMS:  No.  I told him we would be
 3    talking about discovery.
 4              THE COURT:  Okay.
 5              MR. WILLIAMS:  I told him what my idea was and
 6    I was sharing that with Ms. Masterson.
 7         I would like to do a comprehensive
 8    ineffective-assistance-of-counsel claim.  One of the --
 9    one of the problems is that, at least in my opinion,
10    Mr. Allen didn't do a sufficient investigation to what
11    could have been done in preparation for trial, and many
12    of my discovery requests should have been made a year or
13    two ago.
14         The phone issue is somewhat -- something different.
15    Obviously he didn't know that they were going to show up
16    in January of 2019.  But I would like to do a
17    comprehensive --
18              THE COURT:  And what was the explanation that
19    you were provided as to where they were located?  And I
20    tried to get through all of what you filed beforehand,
21    but remind me of where they were located and --
22              MR. WILLIAMS:  I asked, and I didn't get an
23    answer to that question.
24              THE COURT:  Okay.  And that's in the e-mails.
25         Okay.  Miss Masterson, where were they found?
```

1  MS. MASTERSON: They were found in a vacant
2  desk drawer in Detective Cole's -- in the detective room
3  at the Bennington Police Department. There are a number
4  of desks there. One is unoccupied, and they were found
5  in a drawer there.
6  The explanation that I got from Detective Cole as
7  to what had happened was he told me that an officer had
8  been put on light duty following an injury, and so she
9  couldn't go out in the field. She was on light duty,
10  and her task was to reach out to potential claimants of
11  evidence that was no longer needed for any cases.
12  And apparently this officer reached out to Vanessa
13  Garcia and Austin Mayhew, let them know there was
14  materials available for their pickup. Neither of them
15  showed up. These two phones did not get returned to the
16  evidence vault. They got dropped into a drawer when
17  this officer -- who I don't believe is still at the
18  Bennington Police Department.
19  When she left light duty, these remained
20  undiscovered until Detective Cole recently went through
21  the desk drawer to try and get it ready for another
22  officer to occupy, and it was there that he found these.
23  THE COURT: But they have -- they couldn't
24  have come out of the evidence room without being logged.
25  So somebody -- some -- unless they really aren't

following procedures.

1
2          The phone comes out because she erroneously thinks
3   the case is over, and she is going to return them to
4   their owners.  Where is the record of them coming out of
5   evidence?
6          MS. MASTERSON:  I don't have that with me,
7   your Honor.  And I don't know the answer.
8          THE COURT:  Does it exist?
9          MS. MASTERSON:  I hope so.
10         THE COURT:  I mean, you -- I can't imagine a
11  police department giving back property without showing
12  something going into evidence and coming out of evidence
13  and some record of how it's going to be disposed of.
14         MS. MASTERSON:  I do recall Detective Cole
15  telling me that there were notations on the paperwork
16  that these individuals, Vanessa and Austin, had been
17  contacted.  So I am extrapolating from that that there
18  is paperwork that reflects the removal from the evidence
19  vault.
20         THE COURT:  All right.  And whereas the scope
21  of the subpoena may be something that the Court needs to
22  focus on, what's the best argument for why I would rule
23  on a motion for new trial, which raises some of these
24  issues, first, and then authorize the discovery later?
25         MS. MASTERSON:  There's not a good argument

| | |
|---|---|
| 1 | for that, your Honor.  If I may interpose? |
| 2 | THE COURT:  Sure. |
| 3 | MS. MASTERSON:  What -- certainly with the |
| 4 | Court's pronouncement that you want to rule on the |
| 5 | omnibus ineffective assistance claim, that changes our |
| 6 | thinking, of course.  And so we will -- the Court |
| 7 | doesn't need to issue the Rule 17 things.  We will get a |
| 8 | search warrant and get these -- the Cellebrite |
| 9 | extractions done of these phones, and we will provide it |
| 10 | to Mr. Williams.  We will do that expeditiously. |
| 11 | What I would like to see from the Court, and why I |
| 12 | asked -- suggested to Mr. Williams that we needed a |
| 13 | status conference, was first to take the Court's |
| 14 | temperature on whether or not the ineffective assistance |
| 15 | claim is going to be adjudicated presentencing.  That's |
| 16 | been resolved. |
| 17 | What I would like is us to reach a point where |
| 18 | Mr. Williams will stop asking me for discovery.  I want |
| 19 | his discovery to be done -- requests to be done because |
| 20 | then I know what I need to respond to, and -- because I |
| 21 | have been getting e-mails on a fairly regular basis.  I |
| 22 | did my best to respond. |
| 23 | THE COURT:  He is good at that. |
| 24 | MS. MASTERSON:  Indeed he is.  It is a |
| 25 | strength. |

1    But it's nearly impossible -- I have already
2 written Mr. Williams an e-mail and said, "I think I'm
3 lost.  Will you tell me what I haven't answered yet,"
4 and so I would like there to be an organized -- like a
5 way of conveying these requests to me, and then -- then
6 we decide on when it is we're done, and then let's get
7 any amendment to the existing motion filed, and then we
8 can -- I mean, I can start working on it, have started
9 working on our opposition at this point, but it's futile
10 to go down to Bennington and talk to the agents -- or
11 the officers when there's likely to be more coming.
12    THE COURT:  All right.  So then let me ask
13 you, is part of what's at issue the Curcio hearing in
14 which one of the robbery victims was a prior client of
15 Mr. Allen's?
16    MS. MASTERSON:  I don't believe that's an
17 issue.
18    THE COURT:  Okay.
19    MR. WILLIAMS:  That's not an issue.
20    THE COURT:  All right.  Okay.
21  So you are going to need to round up your requests;
22 do it once, be reasonable, because if you are not, I
23 will rule on it and curtail it into reasonableness, and
24 I am going to allow you to pursue the issues you want to
25 pursue on your motion for new trial.

1    MR. WILLIAMS: Thank you.
2        The rule -- the Rule 17 subpoena dealt with the
3    AT&T call records, and then there's a second request
4    about the examination of the device -- the devices
5    themselves. So there's two different issues there. I
6    don't know whether the Court was talking about the -- in
7    the context of the Rule 17 subpoena.
8        I only am asking for call records for a two-week
9    period basically.
10            THE COURT: All right. And there's no reason
11   why I won't issue that. What I am hearing from
12   Ms. Masterson is now that she knows I am going to look
13   at it, a one-time request of everything, which should
14   not include the kitchen sink, as opposed to doing it
15   piecemeal, with a deadline, is going to work best for
16   her.
17            MR. WILLIAMS: I agree, but if I -- if I find
18   something -- every time I turn over a rock, I find
19   something, and then I have to ask for more information.
20   I know that deadlines are good, but --
21            THE COURT: I will be reasonable, but you need
22   to be reasonable as well.
23            MR. WILLIAMS: Yes.
24            THE COURT: And it isn't an infinite number of
25   things.

```
1                MR. WILLIAMS:  No.
2                THE COURT:  It just isn't, because the case
3    just isn't that broad.  We're not talking about fraud
4    that's occurring over four years with 50 participants.
5    It's a pretty narrow event.  And if you find something
6    and hit a vein of gold, and you want to pursue it, I'll
7    be reasonable.  If you are asking for things -- that's
8    why I asked what's in, what's out -- that are
9    unreasonable, I will not authorize it.
10               MR. WILLIAMS:  That's fine with me.
11               THE COURT:  Okay.  So give me a reasonable
12   deadline for your "this is my request for Miss
13   Masterson."
14               MR. WILLIAMS:  I can -- I can get it to her by
15   next Friday.  I am leaving for vacation on Saturday, but
16   I know what -- everything that I have requested are in
17   e-mails, and I just have to put that in one
18   comprehensive document which I can do --
19               THE COURT:  Okay.
20               MR. WILLIAMS:  -- next Friday.
21               THE COURT:  Where are you going on vacation?
22               MR. WILLIAMS:  Going to Miami Beach for a
23   month.
24               THE COURT:  Oh, nice.
25               MR. WILLIAMS:  Yes.
```

1        THE COURT: Go ahead.

2        MR. WILLIAMS: So I can do that. The

3   government can respond to those requests. And then if I

4   could have an opportunity just to amend the pleading so

5   that it's clear what the basis of our motion is.

6        THE COURT: Yes.

7        MR. WILLIAMS: Is that okay?

8        THE COURT: Yes.

9        MR. WILLIAMS: Thank you.

10       THE COURT: So here's -- that will be your

11  deadline, Friday of next week. Then you have -- the

12  government has a time period -- I am going to have Miss

13  Masterson propose it to you -- 45 days, 60 days. Then

14  you will have, say, two weeks after to amend your

15  pleading.

16       You two work reasonably well together. Your

17  deadlines will be my deadlines to the extent that you

18  can work it out. If you can't work it out, nobody ever

19  likes my deadlines, so I will impose them.

20       Do you want me to issue the subpoena now or do you

21  want to be talking and do it by way of agreement as

22  opposed to having a subpoena served and all that stuff?

23       MS. MASTERSON: I think we can work together,

24  your Honor. I don't see the need to involve the Court

25  in this.

1  MR. WILLIAMS: If the U.S. Attorney's Office
2  wants to subpoena those records and provide me copies,
3  that's fine with me. I don't need to go through the --
4  the hoops, and it's more difficult from Florida than it
5  would be in Vermont.
6  THE COURT: Okay. All right. So I will leave
7  it to you to work it out.
8  Anything else that we can address today?
9  MS. MASTERSON: No. I think, your Honor, our
10 opposition to the motion is due on April 4th. I am not
11 asking the Court to set a date now, and I know we want
12 to move with all deliberate speed towards getting the
13 briefing done and getting the motion decided, but with
14 these amendments and everything, I just ask the Court
15 to -- we will need some latitude and we will make a
16 proper -- an appropriate proposal at that -- at a later
17 time.
18 THE COURT: Sure. And especially, as
19 Mr. Williams is going to amend his brief, we're going to
20 be talking about relaxed deadlines for the government,
21 and I expect you two to work those out, and I know you
22 will.
23 MS. MASTERSON: Thank you, your Honor.
24 MR. WILLIAMS: And --
25 THE COURT: Yes?

1  MR. WILLIAMS: It may be too early, but I
2  think we need an evidentiary hearing to hear from the
3  witnesses to really educate the Court about what
4  happened in this case.
5  THE COURT: Well, let me -- let me wait till
6  we get there. And I can't imagine having an evidentiary
7  hearing at this point in time. I'm not ruling that out,
8  but I -- unless somebody is going to say, "I perjured
9  myself on the witness stand," I'm not really seeing the
10 value of that. It may be there, but --
11 MR. WILLIAMS: Okay.
12 THE COURT: Okay? Thank you.
13 MR. WILLIAMS: Great. Thank you.
14 MS. MASTERSON: Thank you, your Honor.
15 (Court was in recess at 1:50 p.m.)
16 *** ** ***

C E R T I F I C A T I O N

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*Anne Nichols Pierce* (signature)

March 10, 2019  _____
Date                                  Anne Nichols Pierce