UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         v.<br><br>JOHN CHINNICI,<br>         Defendant. | Case No. 2:17-cr-77 |

GOVERNMENT'S MEMORANDUM OF LAW AND FACT ADDRESSING THE
DEFENDANT'S WAIVER OF CONFLICT OF INTEREST

The United States of America, by and through its attorney, Christina E. Nolan, United States Attorney for the District of Vermont, hereby files this Memorandum of Law and Fact Addressing the Defendant's Waiver of Conflict and the *Curcio* Hearing. Based on the following memorandum, the files and records in the case, and any testimony to be taken regarding the conflict of interest, the Court should decline to disturb its finding that Chinnici's waiver of the conflict of interest between his trial counsel and a trial witness was knowing and intelligent.

Under the umbrella of his motion for new trial, Chinnici claims now that his waiver of the conflict of interest between his trial counsel and a government witness was not knowing and intelligent. Chinnici asserts that his trial counsel knew that the witness was actually involved in the robbery and therefore counsel would not, or could not, effectively cross-examine the witness, to Chinnici's detriment. As shown below, the claim should be rejected because the waiver was knowing and intelligent, the witness did not testify in a manner harmful to Chinnici, and trial counsel's strategic decision on how to conduct the cross-examination was effective. This issue does not provide a basis for granting the new trial motion.

I.     FACTUAL BACKGROUND

     A.     The Nature of the Conflict

In 1993, Attorney Bud Allen represented Scott Galusha when he was prosecuted in the District of Vermont for bank robbery.

Shortly after midnight on January 11, 2016, Galusha and Anthony Falace, who were then employees of the Martin's Mobil in Bennington, Vermont, were robbed of the night's proceeds by two masked men. One of the men brandished a gun (the Robbery). Galusha and Falace surrendered the bag containing the proceeds to the robbers, who ran away.

On January 14, 2016, John Chinnici was arrested and charged with committing the Robbery in state court. In July 2017, Chinnici was indicted in federal court and charged with violating the Hobbs Act, 18 U.S.C. § 1951, in connection with the Robbery. The Court appointed Bud Allen to represent Chinnici in the federal proceeding.

On June 20, 2018, the government requested a hearing to address the conflict of interest issue arising from Allen's prior representation of Galusha, an anticipated government witness against Chinnici. (*See* Motion for *Curcio* Hearing). (Doc. 33).

     B.     The *Curcio* Hearing

On July 12, 2018, the Court conducted a *Curcio* hearing to address whether Chinnici would "knowingly and willingly" waive the conflict of interest. *See United States v. Curcio*, 680 F2d 881, 878 (2d Cir. 1982).[1] The Court began by questioning whether Chinnici understood "what the conflict is." (Exhibit 1 at 21). Chinnici responded: "Well, the conflict is of my attorney representing Mr. Galusha prior in the past, and the thing is, I don't have a conflict with

---

[1] At this hearing, the Court also addressed a conflict involving the Federal Public Defender's Office, who previously represented Chinnici in an unrelated matter, and its representation of Amy Stone, an anticipated government witness.

that for the aspect of he is representing somebody going against me." (*Id.*). The Court told Chinnici that Galusha "is not going to be positive toward you if he does testify." Chinnici responded: "He's testifying to a person. He is not actually stating me, pointing out me, giving any description of me. He knows nothing about me." (*Id.* at 21-22).

The Court then detailed the testimony expected from Galusha at trial and how Allen had represented Galusha in 1993 in a bank robbery case. Chinnici responded that he understood. (*Id.* at 22). The Court asked Chinnici if he understood that:

- Allen will be questioning Galusha if he testifies;

- Allen has a duty to represent Chinnici's interests and a duty of loyalty to Chinnici, but he has the prior representation of Galusha; and

- Some lawyers may hesitate to vigorously cross-examine and, perhaps, show that former client is a liar, because of the prior representation.

(*Id.* at 23). Chinnici said: "I do [understand], but honestly not in this case." (*Id.*). The Court also asked Chinnici: "[W]ould you like to have somebody else, other than Mr. Allen, to talk to about this? Get a second opinion?" Chinnici declined the Court's offer. (*Id.* at 23).

The Court then inquired about Chinnici's education and background. Chinnici described his experience with the criminal justice system, including two prior federal and two prior state cases. Chinnici mentioned that he had been through two suppression hearings, but he had not been to trial. (*Id.* at 24-25). The Court also confirmed that nothing was interfering with Chinnici's judgment or decision-making capabilities, the prescription medication he took did not affect his thinking, there were no promises or agreements that induced Chinnici to waive the conflict, and he was not subjected to any threats or coercion to waive the conflict. (*Id.* at 30-31).

The Court questioned Attorney Allen as well.  Allen explained that Chinnici's defense was "not that there was no robbery but that Mr. Chinnici didn't do it." (*Id.* at 25).  Allen further explained that "Galusha appears to be simply testifying that he was robbed by two men, he and his co-worker were robbed by two men, but he makes no attempt to identify Mr. Chinnici as one of the robbers.  So we don't really have any problem with that testimony." (*Id.*).  The Court asked if Allen considered cross-examining Galusha with the fact of his prior bank robbery conviction to suggest that Galusha had fabricated the Robbery.  Allen responded that he had considered that, but he did not think the prior robbery would be admissible[2] and, in any event, the problem with that theory was that Galusha's co-worker was also a victim in the Robbery. (*Id.*).

Allen also disclosed to the Court that he had spoken with Galusha about the conflict.  Allen made clear to Galusha that he was representing John Chinnici, not Galusha.  Allen represented to the Court that Galusha did not object.  Allen also shared that he asked Galusha substantive questions about the Robbery, which led the Court to observe that "any damage that's been done has already been done, right?  Because you are obtaining information from Mr. Galusha to assist Mr. Chinnici in his trial."  Allen affirmed that "[w]ith full disclosure to Mr. Galusha, that was exactly what I was doing[,]" and Galusha "was fine with it." (*Id.* at 26-27).

The government represented to the Court that it had questioned Galusha about the conflict, and Galusha did not object to Allen "continuing to participate, that he would waive the conflict." (*Id.* at 27).

---

[2] The Court granted the government's motion *in limine* and precluded evidence about Galusha's prior bank robbery conviction.  (7/23/18:18-20).  At the time of the *Curcio* hearing, the government's motion was pending.  (Doc. 38).

Page **4** of **10**

The Court again advised Chinnici that the Constitutional right to counsel includes the right to conflict-free counsel and "to your attorney's undivided loyalties." (*Id.* at 27-28). The Court and Chinnici then had the following exchange:

> Court: So with that in mind, do you want a lawyer that has no – none of these issues? And do you want me to appoint new counsel? Don't worry about the trial. I can make up all of those differences, but you have a constitutional right to have a person who has no conflicts represent you. Is that what you wish in this case?
>
> Chinnici: No, your Honor. I'm definitely fine with Mr. Allen representing me.
>
> Court: All right. And do you want some more time to think about it? Do you want me to appoint a second attorney to you and have that person give you a second conflict-free opinion? Would that be helpful for you?
>
> Chinnici: No, your Honor. I think that regardless of who spoke with me or anything, my decision would still be the same.
>
> Court: All right. What I am going to do is I am going to ask you to, with your attorney's help – to prepare a written waiver of any conflict of interest, and I am going to ask you again about this, so you have some time to think about it between now and trial.
>
> If you change your mind and you decide you want conflict-free counsel, it's not a problem at all. So you are under no obligation to create a written waiver. You tell me, "I decided not to do it," it's not a problem. But if we are going to go forward on this basis, I want a written waiver of a conflict of interest after you have had an opportunity to think about it. So I am not going to have you do it on the spot. Does that make sense?
>
> Chinnici: Yes, your Honor.

(*Id.* at 28-29).

    C.    <u>The Written Waivers from Chinnici and Galusha</u>

On July 18, 2019, Chinnici filed a written waiver of conflict form. (*See* Exhibit 2). The waiver states:

> Now comes the Defendant and waives any objection to any
> conflict arising from his attorney's prior representation of Scot
> [sic] Galusha, a purported victim in the above-entitled matter. The
> Defendant is aware of the prior representation, has discussed it
> with his attorney and with the Court, and is not concerned it will
> affect the representation he receives.

(*Id.*). The following day, the government filed an executed Statement of Scott Galusha, which read:

> I, Scott Galusha, am a government witness in the trial of *United
> States v. John Chinnici*, case no. 2:17-CR-77. I understand that
> Ernest (Bud) Allen, who represented me beginning in 1993 when I
> was prosecuted in the District of Vermont for bank robbery, is the
> lawyer representing the defendant in this case, John Chinnici. I
> understand that Mr. Allen may cross-examine me in the course of
> his representation of John Chinnici. I am aware that I could ask
> the Court to explore whether Mr. Allen should not be permitted to
> cross-examine me as that could present as a potential conflict of
> interest.
>
> I waive any potential conflict of interest that exists or might exist
> in the fact that my former lawyer may cross-examine me at trial.

(*See* Exhibit 3).

    D.    <u>The Further Inquiry of Chinnici before Jury Selection</u>

On July 23, 2018, before jury selection on the first day of trial and 11 days after the initial *Curcio* hearing, the Court again questioned Chinnici about the conflict:

Court: You have filed a waiver, and I also have one for Mr. Galusha, and, remember, we were talking about whether or not you wanted to continue to have Mr. Allen represent you, notwithstanding the fact that he had previously represented Mr. Galusha who is going to be a witness in this case and, presumably, a witness against you. And I had talked about the way that that conflict may play out, and I wanted to give you an opportunity to think about it, and if you wanted to talk to another attorney, I offered that to you.

Have you had enough time to think about that?

Chinnici: Yes, your Honor.

> Court: Okay. And what's your position on that?
>
> Chinnici: I don't have an issue with that, your Honor.
>
> Court: All right. And you have filed a written waiver in this case of unconflicted counsel, and is that something that you signed voluntarily?
>
> Chinnici: Yes, ma'am.
>
> Court: Do you have any questions for me about it?
>
> Chinnici: No, ma'am.
>
> Court: Okay.

(7/23/18:3-4).

## II. THE CURCIO HEARING MORE THAN ADEQUATELY PROTECTED CHINNICI'S RIGHTS

Under the Sixth Amendment, counsel is deemed ineffective if he had either: "(1) a potential conflict of interest that resulted in prejudice to the defendant, or (2) an actual conflict of interest that adversely affected the attorney's performance." *United States v. Levy,* 25 F.3d 146, 152 (2d Cir.1994). There is an actual conflict when the attorney's and the defendant's interests diverge on a material fact or a legal issue, *Winkler v. Keane,* 7 F.3d 304, 307 (2d Cir.1993), or when the attorney's current representation is impaired by the loyalty he owes a former client, *United States v. Malpiedi,* 62 F.3d 465, 469 (2d Cir.1995). When the court learns of a possible conflict, it must explore the problem. *Levy,* 25 F.3d at 153. If that inquiry reveals an actual or potential conflict, the court has a "disqualification/waiver" obligation. *Id.* If the conflict turns out to be actual and severe, the district court must disqualify the attorney. *Id.*

If the court discovers a lesser or potential conflict, it must proceed to a *Curcio* hearing to obtain an informed waiver of the conflict from the defendant. *Id.* To prove that a potential conflict violated his Sixth Amendment rights, a defendant must demonstrate prejudice. *Winkler,*

7 F.3d at 307.  The sophistication of the defendant is a consideration.  *United States v. Oberoi*, 331 F.3d 44, 50 (2d Cir. 2003), (citing *United States v. Lussier*, 71 F.3d 456, 462 (2d Cir.1995)). *See also United States v. Jenkins*, 943 F.2d 167, 176 (2d Cir. 1991) ("the scope and breadth of the district court's inquiry will necessarily reflect the sophistication, intelligence and comprehension of the particular defendant").  Prejudice will not be found if the objected-to testimony is not adverse to the defendant.  *Oberoi,* 331 F.3d at 50 ("Finally, because the former client's testimony did not hurt Lussier, we concluded 'that, even if the waiver were somehow flawed, Lussier suffered no prejudice from [defense counsel's] purportedly deficient cross-examination of [the former client].'"  Where the former client has waived the attorney-client privilege, any conflict is significantly diminished and waivable because the attorney has free rein to conduct cross-examination.  *Lussier*, 71 F.3d 462.

In the instant case, it is clear that the proceedings to address the conflict of interest were more than adequate to safeguard Chinnici's Sixth Amendment rights.  At the *Curcio* hearing, the Court conducted a thorough colloquy to establish that Chinnici understood the potential conflict. The Court did not ask Chinnici yes or no questions, but asked questions in a form "designed to elicit a narrative," as required in *Curcio.*  680 F.2d at 889.  The Court offered Chinnici outside counsel to advise him in his decision and declined to accept a waiver at the hearing.  The Court also highlighted a possible scenario where a cross-examination could touch upon Galusha's bank robbery conviction, which could give Allen pause in how vigorously he might conduct the cross-examination.  The Court inquired of Allen about the potential conflict, his views of Galusha's expected role at trial, and learned that Allen had already, with Galusha fully aware that Allen represented Chinnici, asked him substantive questions about the Robbery.  The Court required Chinnici to file a written waiver.  Lastly, after an 11-day waiting period and before jury selection

on the first day of trial, the Court again questioned Chinnici about a waiver of the conflict. At that time, Chinnici told the Court he "doesn't have an issue with that." The Court more than satisfied its role of exploring the conflict of interest with Chinnici independent of trial counsel's advice on the matter. Courts "retain discretion to reject a defendant's knowing and intelligent waiver when his attorney's conflict jeopardizes the integrity of judicial proceedings." *United States v. Perez*, 325 F.3d 115, 125–26 (2d Cir. 2003). "Absent such institutional concerns, courts will not 'assume too paternalistic an attitude in protecting the defendant from himself,' and although the defendant's choice of counsel 'may sometimes seem woefully foolish' to the court, the choice remains his." *Perez*, 325 F.3d at 125-26 (quoting *Curcio,* 694 F.2d at 25).

In addition, Chinnici's experience as a criminal defendant cannot be forgotten. With four prior prosecutions – two state and two federal – Chinnici was experienced in criminal court and could understand the issue and make an intelligent decision.

Importantly as well, Galusha's testimony was not actually damaging to Chinnici. Galusha testified to the relatively uncontroverted fact that he and Falace were robbed at gunpoint by two masked men. Galusha did not identify Chinnici as the robber with a gun. Chinnici's knowing and intelligent waiver should not be disturbed.

Moreover, no new facts have been (or will be) presented to the Court to suggest that Chinnici's waiver of the conflict was not knowing and intelligent. The government expects that at the hearing on the Motion for New Trial, Mayhew and Galusha will both deny that Galusha was involved. Accordingly, there can be no credible suggestion that Allen knew something that he should have shared with Chinnici in his decision-making process, or that Allen knew something which somehow constrained him in his cross-examination of Galusha. Indeed,

Galusha's waiver of the conflict of interest allowed Allen to cross-examine Galusha without any limits, a fact well known to Allen at the time.

Under the guise of questioning the validity of Chinnici's waiver of the conflict of interest, Chinnici is really calling into question Allen's strategic decision on how to cross-examine Galusha. While some defense lawyers may relish the opportunity to vigorously cross-examine every government witness, regardless of how consequential the witness' testimony, Allen's decision not to go after Galusha, the sympathetic victim of an armed robbery who did not implicate his client, was reasonable under the circumstances. Allen also must have recognized that even if Galusha was involved in the robbery, that fact did not exonerate his client. The strategic decision to get the witness off the stand quickly when he did not implicate Chinnici was eminently reasonable.

III.     CONCLUSION

The Court properly accepted Chinnici's waiver of Attorney Allen's potential conflict of interest after conducting a thorough *Curcio* hearing. The Court should not disturb its finding that the waiver was knowing and intelligent, and no new trial should be ordered on this basis.

Dated at Burlington, in the District of Vermont, this 13th day of October, 2019.

Respectfully submitted,

UNITED STATES OF AMERICA

CHRISTINA E. NOLAN
United States Attorney

*/s/ Barbara A. Masterson*
BARBARA A. MASTERSON
JOSEPH R. PERELLA
Assistant U.S. Attorneys
P.O. Box 570
Burlington, VT 05402-0570
(802) 951-6725